Alan Steven Wolf – Bar No. 94665
Caren Jacobs Castle – Bar No. 93888
Daniel K. Fujimoto – Bar No. 158575
Kayo Manson-Tompkins - Bar No. 136476
THE WOLF FIRM, A Law Corporation
2955 Main Street, Second Floor
Irvine, CA 92614
Telephone:  (949) 720-9200
Fax:  (949) 608-0128
Attorneys for Creditor, DLJ Mortgage
Capital, Inc.

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

LOS ANGELES DIVISION

| | |
|---|---|
| In re: | CASE NO:  2:17-bk-16581-SK |
| Gae Thornton, | CHAPTER:  13 |
| Debtor. | **OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** |
| | **341a Meeting:** |
| | Date: 6/30/2017 |
| | Time: **9:00 AM** |
| . | Room: 1 |
| | 915 Wilshire Blvd., 10th Floor |
| | Los Angeles, CA 90017 |
| | **Confirmation Hearing:** |
| | Date: 8/3/2017 |
| | Time: **10:00 AM** |
| | Courtroom: 1575 |
| | UNITED STATES BANKRUPTCY COURT |
| | 255 East Temple Street |
| | Los Angeles, CA 90012-3332 |

TO:  THE HONORABLE SANDRA R. KLEIN, UNITED STATES BANKRUPTCY

JUDGE:

Creditor, DLJ Mortgage Capital, Inc., ("Creditor"), secured creditor of the above-entitled Debtor, Gae Thornton ("Debtor"), hereby submits its objection to Debtor's proposed Chapter 13 Plan of Reorganization.

## **BACKGROUND**

1.    Creditor holds a Promissory Note (the "Note") in the original principal sum of $540,000.00 made, executed, and delivered by Gae Thornton on May 11, 2006 to BankUnited, FSB ("Lender"). Pursuant to the Note, Debtor is obligated to make monthly principal and interest payments. A copy of the Note is attached hereto as Exhibit "1" and incorporated herein by reference.

2.    The Note is secured by a Deed of Trust dated May 11, 2006 made, executed, and delivered to Lender by Gae Thornton and encumbering the real property commonly known as 485 East Elizabeth Street, Pasadena, CA 91104 ("Property"). The Deed of Trust was recorded on May 17, 2006 in the official records of the Los Angeles County Recorder's office. A copy of the Deed of Trust is attached hereto as Exhibit "2" and incorporated herein by reference.

3.    Lender's interest in the Deed of Trust was subsequently assigned to Creditor. A copy of the Corporation Assignment of Deed of Trust evidencing the assignment to Creditor is attached hereto as Exhibit "3" and incorporated herein by reference.

4.    Creditor currently holds the Note and is entitled to enforce the provisions of the Note and Deed of Trust. Lender indorsed the Note in blank, converting the Note to a bearer instrument, and Creditor is in rightful possession of the indorsed in blank Note.

5.    On or about July 23, 2012, Debtor filed a prior voluntary petition for relief under Chapter 7 of the Bankruptcy Code, and was assigned case No. 2:12-bk-35207-BR. Said case was [discharged] on or about October 29, 2012. A copy of the PACER docket entries is attached hereto as Exhibit "4" and incorporated herein by reference.

///

6401-39980

6.      On or about April 25, 2017, Debtor filed a prior voluntary petition for relief under Chapter 13 of the Bankruptcy Code, and was assigned case No. 2:17-bk-15044-VZ. Said case was [dismissed] on or about May 15, 2017. A copy of the PACER docket entries is attached hereto as Exhibit "5" and incorporated herein by reference.

7.      On May 30, 2017, Debtor filed a voluntary petition under Chapter 13 of the United States Bankruptcy Code. Debtor's Chapter 13 Plan of Reorganization ("Plan") does not propose to make payments to the Trustee in any amount or length of time. The Plan lists Creditor in Class 2 but fails to provide for treatment of Creditor's arrears.

8.      Creditor is in the process of finalizing its Proof of Claim in this matter. The estimated pre-petition arrearage on Creditor's secured claim is in the sum of $3,288.34.

9.      Debtor will have to increase the payment through the Chapter 13 Plan to Creditor to approximately $109.62 monthly in order to cure Creditor's pre petition arrears over a period not to exceed 60 months.

10.     Debtor is in default under the terms of the Note and Deed of Trust with Creditor.

## **GROUNDS FOR OBJECTION**

Creditor objects to Debtor's proposed Plan for the following reasons:

1.      Failure to Provide for Submission of Future Income to the Supervision and Control of the Chapter 13 Trustee

Section I.A. of the Debtor's Plan is blank, and thus Debtor's Plan violates 11 U.S.C. §1322(a)(1) and cannot be confirmed.

2.      Failure to Provide for Full Value of Arrearage

Debtor's Plan understates the pre-petition arrearages. While Debtor's Plan proposes to cure arrearage in the amount of $0.00, the actual arrearages total $3,288.34. Debtor will have to increase the payment through the Plan to Creditor to approximately $109.62 monthly in order to cure Creditor's pre-petition arrears over the life of the Plan.

///

6401-39980

3.   <u>Feasibility</u>

Debtor's Schedule "J" indicates that Debtor has disposable income of -$162.00. However, Debtor will be required to apply a minimum of $109.62 monthly in order to cure Creditor's pre-petition arrears over the life of the Plan. After reviewing Debtor's Schedule "I" and Schedule "J," and providing for the correct arrearage amount owed to Creditor, there is insufficient income to fund the Plan. Therefore, the Plan is not feasible and should not be confirmed.

4.   <u>Improper Modification of Secured Claim</u>

Creditor objects to Debtor's provision for payments of $1,893.00 for 60 months for a total of $113,580.00 to the extent that this might be an attempt to modify Creditor's claim. As Creditor's claim is secured solely by a lien on Debtor's principal residence, 11 U.S.C. §1322(b)(2) prevents the modification of Creditor's claim, including any proposed reduction in the amount of its secured claim.

Creditor reserves the right to raise further objections at the time of the confirmation hearing.


WHEREFORE, Creditor prays:

1.      Confirmation of Debtor's Plan be denied;

2.      Alternatively, that Debtor's Plan be amended to reflect that the pre-petition arrears listed in Creditor's Proof of Claim be paid within a period not exceeding 60 months; and

3.      Alternatively, Creditor requests that Debtor amend the Plan to reflect Creditor maintains a fully secured claim subject to an Adequate Protection Order or Order Conditioning the Automatic Stay requiring Debtor to maintain current Plan payments to the Chapter 13 Trustee; and

///

///

///

6401-39980

1      4.      For such other and further relief as this Court deems appropriate.

2

3   Dated:  July 18, 2017                      Respectfully submitted,

4
                                              THE WOLF FIRM,
5                                             A Professional Law Corporation

6

7                                             By:  /s/ Daniel K. Fujimoto
                                              Daniel K. Fujimoto
8                                             Attorneys for Creditor
                                              DLJ Mortgage Capital, Inc.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN
6401-39980

# EXHIBIT  1

# BankUnited

## Adjustable Rate Note
### (1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND MY PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THIS NOTE. THE PRINCIPAL BALANCE OF THIS NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.

| May 11, 2006 | SANTA ANA | California |
|---|---|---|
| [Date] | [City] | [State] |

485 EAST ELIZABETH STREET
PASADENA, CA 91104

[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 540,000.00 plus any amounts added in accordance with Section 3(E) of this Note (this amount is collectively called "Principal"), plus interest, to the order of Lender. Lender is    BankUnited, FSB

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder".

## 2.  INTEREST

### (A) Interest Rate

Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of            7.3750          %. The interest rate I will pay will change as provided in this Section 2.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### (B) Interest Change Dates

The interest rate I will pay may change on the first day of            July 2006 and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".

### (C) Interest Rate Limits

My interest rate will never be greater than        9.9500          %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.

### (D) Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."

If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (E) Calculation of Interest Rate Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding Three and 2700/10000                percentage points ( 3.2700   %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.

In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will make my monthly payments on the first day of every month, beginning on   July 2006 I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  June 1, 2046    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make monthly payments at

7815 NW 148 ST., MIAMI LAKES, FL  33016

or at a different place if required by the Note Holder.

**(B)  Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ 1,483.27           .  My initial monthly payment was calculated using a rate of 1.4500       %, the original Principal, and the Maturity Date.  This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C)  Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on July 1, 2007
and on that same day every twelfth (12th) month thereafter.  Each of these dates is called a "Payment Change Date."  My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D)  Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date.  However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date.  The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E)  Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note.  In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time.  For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time.  For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed.  In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation.  The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date.  The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G)  Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.  NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.  BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due.  A payment of Principal only is known as a "Prepayment".  When I make a Prepayment, I will tell the Note Holder in writing that I am doing so.  I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge.  The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note.  However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of this Note.  If I make a partial Prepayment, there will be no changes in the due date of my monthly payments unless the Note Holder agrees in writing to those changes.

My partial Prepayment may reduce the amount of my monthly payments after the first Interest Change Date following my partial Prepayment.  However, any reduction due to my partial Prepayment may be offset by an interest rate increase or other factors.

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Initials: G_ L_

REDACTED                                                                                           REDACTED

## 6.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED
### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be       6.0000       % of such monthly payment due.  I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount.  That date must be at least thirty (30) days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorney's fees.

## 8.    GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10.    WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11.    UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions read as follows:

"Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that

Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

Borrower has executed and acknowledges receipt of pages 1 through 4 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal) _____ (Seal)
GAE THORNTON                        -Borrower                                    -Borrower

_____ (Seal) _____ (Seal)
                                         -Borrower                                    -Borrower

_____ (Seal) _____ (Seal)
                                         -Borrower                                    -Borrower

[Sign Original Only]

REDACTED                                                                    REDACTED

Multistate Adjustable Rate Note – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change
Page 4 of 4                                    Initials G. T

# BankUnited

## ADDENDUM TO THE NOTE
### Prepayment Penalty
### (Three Year Penalty Period)

This prepayment penalty addendum ("Addendum") is made this  11  day of  May 2006
and is incorporated into and shall be deemed to amend and supplement the Note made by the
undersigned (the "Borrower") to  BankUnited, FSB

(the "Lender") and dated the same date as this Addendum (the "Note").

The Note is secured by a Mortgage or Deed of Trust or comparable security instrument (the
"Security Instrument") covering the property (the "Property") identified in the Security Instrument.

This Addendum provides for a penalty with respect to prepayments of the obligation represented
by the Note made within the first three years of the date of the Note.

Accordingly, Paragraph 5 of the Note (Borrower's right to prepay) is replaced with this
prepayment penalty addendum.

**Additional Covenants.**   In addition to the covenants and agreements made in the Note,
Borrower and Lender further covenant and agree as follows:

**Borrowers Right To Prepay – Prepayment Penalty.**

I have the right to make payments of principal at any time before they are due.  A payment of
principal only is known as a "prepayment".  When I make a prepayment, I will give notice to the
Note Holder in writing that I am doing so.

Subject to the prepayment penalty specified below, I may make a full prepayment or partial
prepayments of my obligation.  The Note Holder will use all of my prepayments to reduce the
amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no
changes in the due date or in the amount of my monthly payment unless the Note Holder agrees
in writing to those changes.

If I make a full prepayment within the first three years of the date of the Note, that pays the loan
off in full, I will pay a prepayment penalty in the amount of six months' advance interest (at the
rate of interest in effect at the time the full prepayment is made) on the original principal balance
the loan had on the initial date of the Note.

If I make partial prepayments of this loan during the first three years of the Note term, beginning
on the date of the Note, I will pay a prepayment penalty in the amount of six months' advance
interest (at the rate of interest in effect at the time any such partial prepayments are made) on
the amount by which the aggregate prepayments made within any consecutive twelve month
period exceed twenty percent (20%) of the original principal balance the loan had on the initial
date of the Note.  No prepayment penalty will be assessed for any prepayment made after the
first three years of the Note term.

The Note Holder's failure to collect a prepayment penalty at the time a prepayment is received
shall not be deemed a waiver of such penalty and any such penalty calculated in accordance
with this section shall be payable on demand.

REDACTED

REDACTED
REDACTED

All other terms and conditions of the above referenced Note remain in full force and effect.   By signing below, Borrower accepts and agrees to the terms and covenants contained in this Prepayment Penalty Addendum.

WITNESS THE HAND(S) AND SEALS OF THE UNDERSIGNED.

_____ (Seal)     _____ (Seal)
GAE THORNTON                  -Borrower                              -Borrower


_____ (Seal)     _____ (Seal)
                                        -Borrower                              -Borrower



DATE  May 11, 2006  _____

REDACTED                                    REDACTED

Loan Number: REDACTED

## ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said Note.

NOTE DATE: **May 11, 2006**

ORIGINAL LOAN AMOUNT: **$540,000.00**

BORROWER NAME(S): **GAE THORNTON**

PROPERTY ADDRESS: **485 EAST ELIZABETH STREET, PASADENA, CA 91104**

PAY TO THE ORDER OF

BANKUNITED, N.A. F/K/A BANKUNITED

WITHOUT RECOURSE

COMPANY: **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF BANKUNITED, FSB, CORAL GABLES, FLORIDA**

Esther Santos

BY: _____

TITLE: _____ Attorney-in-Fact for the FDIC _____

SIGNATURE: _____

REDACTED                    REDACTED

REDACTED



Loan Number:   REDACTED

## ALLONGE TO PROMISSORY NOTE

For purposes of further endorsement of the following described Note, this allonge is affixed and becomes a permanent part of said Note.

NOTE DATE: **May 11, 2006**

ORIGINAL LOAN AMOUNT: **$540,000.00**

BORROWER NAME(S): **GAE THORNTON**

PROPERTY ADDRESS: **485 EAST ELIZABETH STREET, PASADENA, CA 91104**

---

PAY TO THE ORDER OF

_____

WITHOUT RECOURSE

COMPANY:   **BANKUNITED, N.A. F/K/A BANKUNITED**

BY:   _____ **Esther Santos** _____

TITLE:   _____ **Senior Vice President** _____

SIGNATURE:   _____

---

REDACTED              REDACTED

REDACTED

9

Thornton
DLJW

KASOTA
WAREHOUSE-WARE

# EXHIBIT 2

▲  **This page is part of your document - DO NOT DISCARD**  ▲

**06 1085647**

RECORDED/FILED IN OFFICIAL RECORDS
RECORDER'S OFFICE
LOS ANGELES COUNTY
CALIFORNIA
**05/17/06 AT 08:00am**

## TITLE(S) :

▲  REDACTED  ▲

| FEE | FEE $*52* FF | | D.T.T. | |
| | DAF $ *2* | *16* | | |
| | C-20 | | | |
| CODE 20 | | | | |
| CODE 19 | NCPF Code 19 $*4.8* | | | |
| CODE 9 ___ | | | | |

NOTIFICATION SENT $4©

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**      **Number of AIN's Shown**

☐☐☐☐ - ☐☐☐☐ - ☐☐☐     ☐☐☐

▲  **THIS FORM IS NOT TO BE DUPLICATED**  ▲

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
RESIDENTIAL DIVISION

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO
**BANKUNITED, FSB**
**ATTN: POST CLOSING**
**7815 NW 148 STREET**
**MIAMI LAKES, FL  33016**

06 1085647

5838-031-025

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated **May 11, 2006**                    , together with all Riders to this document.  *G.T*
**(B)  "Borrower"** is **GAE THORNTON, AN UNMARRIED WOMAN** ~~AS HER SOLE AND SEPARTE PROPERTY~~

Borrower is the trustor under this Security Instrument.
**(C)  "Lender"** is  **BankUnited, FSB**
Lender is a  **CORPORATION**                                                      organized and existing under
the laws of  **UNITED STATES OF AMERICA**                                          . Lender's address is
**7815 NW 148 STREET, MIAMI LAKES, Florida  33016**

. Lender is the beneficiary under this Security Instrument.

**(D)  "Trustee"** is **ESTHER SANTOS**

**(E)  "Note"** means the promissory note signed by Borrower and dated  **May 11, 2006**                    . The Note states that Borrower owes Lender  **Five Hundred Forty Thousand and no/100**
Dollars (U.S. $ **540,000.00**                 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 01, 2046**
**(F)  "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)  "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(H)  "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] Other(s) [specify] |
| [ ] 1-4 Family Rider | [ ] Biweekly Payment Rider | |

**CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

[Space Above This Line For Recording Data]

3

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the                **COUNTY**                of                **LOS ANGELES**                :

[Type of Recording Jurisdiction]                              [Name of Recording Jurisdiction]

**SEE ATTACHED LEGAL DESCRIPTION MADE A PART HERETO. EXHIBIT "A"**

which currently has the address of                **485 EAST ELIZABETH STREET**
[Street]

**PASADENA**                , California                **91104**                ("Property Address"):
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                **06  1085647** Form 3005 1/01
ITEM 1849L2 (0011)   MFCA3111                *(Page 2 of 12 pages)*   REDACTED                GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

05/17/06

Title Order Number:

File Number:                    REDACTED

## Exhibit "A"

Real property in the City of Pasadena, County of Los Angeles, State of California, described as follows:

LOT 42 OF BRENT BROS. AND CROWELL'S SUBDIVISION OF PART OF BLOCK "M" OF THE SUBDIVIDED LANDS OF J. H. PAINTER AND B. F. BELL, IN THE CITY OF PASADENA, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 21, PAGE 19 OF MISCELLANEOUS RECORDS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 5838-031-025

4

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1849L3 (0011)    MFCA3111                    *(Page 3 of 12 pages)*        REDACTED

**06  1085647**

**Form 3005 1/01**
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1849L4 (0011)   MFCA3111                    *(Page 4 of 12 pages)*

06  1085647

REDACTED

Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

05/17/06

also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

**CALIFORNIA**—Single Family—Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**

**06 1085647**

Form 3005 1/01
GREATLAND ■

ITEM 1849L5 (0011)   MFCA3111                    *(Page 5 of 12 pages)*          REDACTED          To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**·9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

**CALIFORNIA**—Single Family—**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1849L6 (0011)     MFCA3111          *(Page 6 of 12 pages)*

REDACTED

**06 1085647**   Form 3005 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

ITEM 1849L7 (0011)  MFCA3111    *(Page 7 of 12 pages)*    REDACTED

06  1085647

**Form 3005 1/01**
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

05/17/06

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

**06 1085647**

05/17/06

*10*

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or

**CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**  **06 1085647** **Form 3005 1/01**

GREATLAND ■

ITEM 1849L9 (0011)        MFCA3111        *(Page 9 of 12 pages)*    REDACTED   To Order Call: 1-800-530-9393 □Fax: 616-791-1131

formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

Form 3005 1/01

GREATLAND ■

ITEM 1849L10 (0011)    MFCA3111    (Page 10 of 12 pages)    To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

REDACTED

06 1085647

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 12 of this
Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)       _____ (Seal)
GAE THORNTON                      -Borrower                                    -Borrower


_____ (Seal)       _____ (Seal)
                                  -Borrower                                    -Borrower


_____ (Seal)       _____ (Seal)
                                  -Borrower                                    -Borrower


Witness:                                      Witness:

_____              _____


State of California               )
County of  Los Angeles            )
   On  May 11 2006                         before me,  Gemma P. Goeas Notary Public
personally appeared
          GAE THORNTON

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature: _____



GEMMA P. GOEAS
COMM. #1429845
Notary Public California
ORANGE COUNTY
My Comm. Expires 7/11/07

CALIFORNIA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                     Form 3005 1/01
ITEM 1849L12 (0011)      MFCA3111              (Page 12 of 12 pages)      REDACTED    GREATLAND ■
                                                                   To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

06  1085647

# BankUnited

## Adjustable Rate Rider
### (1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate)
### (1 Month MTA ARM)

THIS ADJUSTABLE RATE RIDER is made this **11th** day of **May 2006**

and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note, as modified or amended (the "Note") to **BankUnited, FSB**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**485 EAST ELIZABETH STREET
PASADENA, CA 91104**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, MY MONTHLY PAYMENT, AND THE PRINCIPAL BALANCE. MY MONTHLY PAYMENT INCREASES MAY BE LIMITED. BOTH MY MAXIMUM INTEREST RATE AND MINIMUM INTEREST RATE ARE LIMITED. MY INITIAL REQUIRED MONTHLY PAYMENT AMOUNT WILL NOT BE SUFFICIENT TO PAY THE INTEREST THAT ACCRUES UNDER THE NOTE. THE PRINCIPAL BALANCE OF THE NOTE MAY INCREASE TO AN AMOUNT THAT IS LARGER THAN THE AMOUNT THAT I ORIGINALLY BORROWED.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

**"2.     INTEREST**
**(A) Interest Rate**
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **7.3750** %. The interest rate I will pay will change as provided in this Section 2.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of this Note.
**(B) Interest Change Dates**
The interest rate I will pay may change on the first day of **July 2006** and on that same day every month thereafter. Each date on which my interest rate could change is called an "Interest Change Date".
**(C) Interest Rate Limits**
My interest rate will never be greater than **9.9500** %. My interest rate will never be less than the amount of the then applicable Margin described in Section 2(E) below.
**(D) Index**
Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the Twelve Month Average of the monthly yields (the "Monthly Yields") on actively traded United States Treasury securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Statistical Release entitled "Selected Interest Rate (H.15)." The Twelve-onth Average is determined by adding together the Monthly Yields for the most recently available twelve months, dividing that sum by 12, and then rounding the resulting number to four decimal places. The most recent Index figure available as of the date 15 days before each Interest Change Date is called the "Current Index."
If the Index, or any substitute Index, is no longer available, the Note Holder will choose a new Index which is based upon comparable information. The Note Holder will give me notice of this choice.
**(E) Calculation of Interest Rate Changes**
Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **Three and 2700/10000** percentage points ( **3.2700** %) (the "Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one-percentage point (0.125%). Subject to the limits stated in Section 2(C) above, the rounded amount will be my new interest rate, which will become effective on the Interest Change Date. That interest rate will remain in effect until the next Interest Change Date.
In the event a new Index is selected in accordance with Section 2(D) above, a new Margin may be established. The new Index and Margin will result in an interest rate that is substantially similar to the interest rate that was in effect at the time that the old Index became unavailable.

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 1 of 3   **06  1085647**   Initials: G.T

MFCD5084

**(A) Time and Place of Payments**

I will make my monthly payments on the first day of every month, beginning on    **July 2006**
. I will make a payment every month until I have paid all of the Principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2046**
, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date".

I will make monthly payments at **7815 NW 148 ST., MIAMI LAKES, FL 33016**

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payment**

My initial monthly payment will be in the amount of U.S. $ **1,483.27**                    . My initial monthly payment was calculated using a rate of **1.4500**         %, the original Principal, and the Maturity Date. This rate is lower than the initial interest rate stated in Section 2(A) above.

The amount of my initial monthly payment will change as provided in this Section 3.

**(C) Payment Change Dates**

My monthly payment will change as required by Section 3(D) below beginning on the due date of my thirteenth (13th) payment, which is due on **July 1, 2007**
and on that same day every twelfth (12th) month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment will also change as provided under Section 3(F) below.

I will pay the amount of my new monthly payment each month beginning on each Payment Change Date until the next Payment Change Date, unless my monthly payments are changed earlier as provided in Section 3(F) below.

**(D) Calculation of Monthly Payment Changes; Limitations**

On each Payment Change Date, my monthly payment will change to the amount that would be sufficient to repay the Principal that I am expected to owe at the Payment Change Date, together with interest at the rate in effect during the preceding month, in full in substantially equal monthly installments through the Maturity Date. However, unless Section 3(F) or Section 3(G) below apply, the amount of my new monthly payment, beginning on each Payment Change Date, will be limited to an amount that is no more than 7 1/2% greater than the amount I am required to pay under this Note immediately prior to that Payment Change Date. The Note Holder's monthly billing statement may disclose other payment options that I may have, if I should wish to pay a monthly payment that is larger than this amount.

**(E) Changes in My Unpaid Principal**

My initial required monthly payment amount will not be sufficient to pay the interest that will accrue under this Note at the initial interest rate stated in Section 2(A) of this Note, and may be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that thereafter are in effect under this Note. In addition, since my monthly payment amount changes less frequently than the interest rate and since the monthly payment is subject to the payment limitations described in Section 3(D) above, my subsequent monthly payments could be lesser or greater than the amount sufficient to pay the interest that will accrue under this Note at the interest rates that are in effect under this Note from time to time. For each month that my monthly payment is less than the interest that accrues under this Note, the Note Holder will subtract the monthly payment from the amount of the accrued interest and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate that is in effect under this Note from time to time. For each month that the monthly payment is greater than the interest that accrues under this Note, the Note Holder will apply the excess towards a Principal reduction of this Note.

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed a maximum amount equal to 115% of the Principal amount originally borrowed. In the event my unpaid Principal would otherwise exceed that 115% limitation on a monthly payment due date, I will begin paying a new monthly payment on that due date, and will continue to make this payment each month until the next Payment Change Date, subject at all times to a further increase in my monthly payment under this Section 3(F) if my unpaid Principal would again otherwise exceed the 115% limitation. The new monthly payment will be the amount that would be sufficient to repay my then unpaid Principal, together with interest at the rate in effect during the month prior to the payment due date, in full in substantially equal monthly installments through the Maturity Date. The new monthly payment will be determined without applying the 7 1/2% payment limitation described in Section 3(D) of this Note.

**(G) Required Full Monthly Payment**

On the 5th Payment Change Date, on each succeeding 5th Payment Change Date thereafter, and on the final Payment Change Date, the monthly payment will be determined without regard to the 7 1/2% payment limitation described in Section 3(D) of this Note.

**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me, and also the title and telephone number of a person who will answer any question I may have regarding the notice."

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read, in its entirety, as follows:

**"Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed,

05/17/06

MFCD5084
Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 2 of 3    06 1085647    Initials: G.T.

contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower."

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Adjustable Rate Rider.

_____ (Seal) _____ (Seal)
GAE THORNTON                     -Borrower                                      -Borrower

_____ (Seal) _____ (Seal)
                                 -Borrower                                      -Borrower

_____ (Seal) _____ (Seal)
                                 -Borrower                                      -Borrower

[Sign Original Only]

MFCD5084

Multistate Adjustable Rate Rider – 1 Year MTA Index – Initial Discounted Monthly Payment – Payment Caps and Maximum Rate – Monthly Rate Change

Page 3 of 3   06 1085647   Initials: _____

REDACTED

# EXHIBIT  3




**This page is part of your document - DO NOT DISCARD**



## 20170689618



REDACTED

Pages:
0004

**Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California**

**06/21/17 AT 02:40PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



# REDACTED

# REDACTED

REDACTED

## REDACTED

**SEQ:
01**

DAR - Mail (Intake)

# REDACTED

**THIS FORM IS NOT TO BE DUPLICATED**



E621013



**This Instrument was Prepared By:**
**Mireya Foster**
BankUnited, N.A..
7815 N.W. 148th Street
Miami Lakes, FL 33016

Document Number:13824129

REDACTED

Batch Number:8383595

REDACTED

When recorded return to : *RMG As*
Richmond Monroe Group
82 Jim Linegar LN
Branson West, MO. 65737
SPS #    REDACTED

*SPo/*    REDACTED

## ASSIGNMENT OF DEED OF TRUST

THIS ASSIGNMENT (this "Assignment") confirms the transfer and/or assignment in accordance with the Purchase Agreement, as defined below, by and between the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF BANKUNITED, FSB, CORAL GABLES, FLORIDA**, organized under the laws of the United States of America ("Assignor"), having an address of 1601 Bryan Street, Suite 1700, Dallas, Texas 75201, Attention: Settlement Manager, and **BANKUNITED, N.A. F/K/A BANKUNITED** ("Assignee"), with an address of **7815 N.W. 148th Street, Miami Lakes, Florida 33016.**

WHEREAS, on May 21, 2009, in accordance with the Federal Deposit Insurance Act, 12 U.S.C. § 1821 *et seq.* (the "FDIC Act"), the Office of Thrift Supervision took possession of all assets and affairs of BankUnited, FSB, and appointed the Assignor as the receiver of BankUnited, FSB.

WHEREAS, in accordance with the FDIC Act, the Assignor is empowered to liquidate the assets of BankUnited, FSB in order to wind down the affairs of BankUnited, FSB.

WHEREAS, on or about May 21, 2009, in accordance with that certain Purchase and Assumption Agreement (Whole Bank, All Deposits) dated May 21, 2009 (the "Purchase Agreement"), by and among the Assignor, Assignee and the Federal Deposit Insurance Corporation ("FDIC"), the Assignor sold certain assets of BankUnited, FSB to Assignee, including but not limited to, the following loan documentation and other rights and interests:

A.   All of the loan documents, contracts, agreements, records, etc., underlying and/or related to the Borrower, **GAE THORNTON, AN UNMARRIED WOMAN**, including but not limited to the following (collectively, the "Loan Documents"):

1.   **May 11, 2006, $540,000.00, Adjustable Rate Note** executed and delivered by **GAE THORNTON, AN UNMARRIED WOMAN to BankUnited, FSB**; and

2.   **May 11, 2006** Deed of Trust executed and delivered by **GAE THORNTON, AN UNMARRIED WOMAN to BankUnited, FSB** (recorded on **May 17, 2006** in Instrument No: **06 1085647**, in the Official Public Records of **LOS ANGELES** County, **CALIFORNIA**) in the Principal Amount of $540,000.00.

B.   The rights, claims and interests underlying and arising from the Loan Documents (hereinafter referred to as the "Rights"); and

REDACTED

REDACTED

REDACTED

9

Thornton
DLJW

KASOTA
WAREHOUSE-WARE

C.   Any and all claims, actions, causes of action, choses of action, judgments, demands, rights, damages and liens, together with the right to seek reimbursement of attorney's fees, costs or other expenses of any nature whatsoever, whether known or unknown, arising from, relating to or based upon the Loan Documents and the Rights (collectively, the "Claims").

NOW, THEREFORE, for valuable consideration granted by Assignee to Assignor, receipt of which is hereby acknowledged, Assignor hereby agrees as follows:

1.   <u>Assignment of Loan Documents, Rights and Claims</u>. Assignor hereby unconditionally grants, transfers and assigns to Assignee all of Assignor's right, title and interest in the Loan Documents, Rights and Claims.

2.   <u>All Other Documents</u>. Assignor hereby unconditionally grants, transfers and assigns to Assignee all Assignor's right, title and interest in the Loan Documents and in all other documents or agreements entered into or received by BankUnited, FSB in connection with or related to the Loan Documents, Claims and/or Rights.

3.   <u>Representations and Warranties</u>. In accordance with the FDIC Act, Assignor has full power to sell and assign the Loan Documents, Rights and Claims to the Assignee. Assignor has made no prior assignment or pledge of the Loan Documents, Rights and Claims. This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

*[Remainder of Page Intentionally Left Blank]*

REDACTED                                                    REDACTED

4.  <u>Successors and Assigns</u>. This Assignment shall inure to the benefit of the successors and assigns of the Assignor and Assignee, and be binding upon the successors and assigns of Assignor and Assignee.

IN WITNESS THEREOF, Assignor has executed this Assignment to Assignee as of this ___ day of **October, 2016**.

> **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER OF BANKUNITED, FSB, CORAL GABLES, FLORIDA**, organized under the laws of the United States of America
>
> By: _____
>
> Name:       **Esther Santos**
>
> Title:  Attorney-in-Fact

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On the ___ day of **October, 2016**, before me, _____ **Mireya Foster** _____ a Notary Public, personally appeared, _____ **Esther Santos** _____ as the Attorney-in-Fact of the FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as the RECEIVER OF BANKUNITED, FSB, CORAL GABLES, FLORIDA, acknowledged on behalf of the corporation who is (check one) ___✓___ personally known to me or has provided me with (insert type of identification) _____ N/A _____ as satisfactory evidence that he/she is the person who executed this instrument.

MIREYA FOSTER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF014006
Expires 8/30/2017

_____
Notary Public, acting in the State and County Aforesaid
(Print Name): (See Notary Seal)
My Commission Expires: (See Notary Seal)

REDACTED        REDACTED






**This page is part of your document - DO NOT DISCARD**

# 20170689624



REDACTED

**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**06/21/17 AT 02:41PM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



REDACTED

REDACTED

REDACTED

REDACTED

**SEQ:**
**01**

DAR - Mail (Intake)

REDACTED

**THIS FORM IS NOT TO BE DUPLICATED**




E621013

**This Instrument was Prepared By:**
**Mireya Foster**
BankUnited, N.A..
7815 N.W. 148th Street
Miami Lakes, FL 33016

Document Number 13824160
REDACTED
Batch Number:8383607
REDACTED

When recorded return to : RmG As'
Richmond Monroe Group
82 Jim Linegar LN
Branson West. MO. 65737
SPS #    REDACTED

BU Loan #    REDACTED                         The space above for recorder's use only
SPS/ REDACTED

## ASSIGNMENT OF DEED OF TRUST

**BANKUNITED, N.A. F/K/A BANKUNITED**, (the "Assignor"), having its principal place of business at **7815 NW 148th Street, Miami Lakes, Florida 33016** in consideration of the sum of Ten Dollars and No/100 Cents ($10.00) and other valuable consideration, the receipt and sufficiency of which is hereby acknowledged, received from or on behalf of _____ See Attached Exhibit " A " _____ ("Assignee").

"Assignor", does hereby grant, bargain, sell, assign, transfer and set over to "Assignee", its successors and/or assigns,   in the original amount of **$540,000.00** that certain Deed of Trust by **GAE THORNTON, AN UNMARRIED WOMAN** to BankUnited, FSB dated **May 11, 2006**, as described in that certain Deed of Trust recorded **May 17, 2006**, Document # **06 1085647** in the **LOS ANGELES** County, State of **CA**, together with the Note or other obligation secured by said Deed of Trust and monies due and to become due thereon, including interest thereon.

**PROPERTY ADDRESS: 485 EAST ELIZABETH STREET, PASADENA, CA 91104**

To have and to hold the same unto the Assignee, its successors and/or assigns forever.

IN WITNESS WHEREOF, the Assignor has caused this Assignment of Deed of Trust to be executed in its name by its officer duly authorized this _____ of **October, 2016** in the presence of:

**Witnesses:**

(Irene) Borges

Sharon Collet

**BANKUNITED, N.A. F/K/A BANKUNITED**

**Esther Santos**
Senior Vice President

REDACTED                                                     REDACTED

Page 1 of 2

REDACTED

Thornton
DLJW

KASOTA
WAREHOUSE-WARE

STATE OF FLORIDA
COUNTY OF MIAMI-DADE

On the 18 day of October, 2016 before me _____**Mireya Foster**_____, a Notary Public, in and for said State, personally appeared _____**Esther Santos**_____ as _____**Senior Vice President**_____ of BANKUNITED, N.A., F.K.A BANKUNITED, personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s), is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify, that the foregoing paragraph is true and correct. I further certify that _____**Esther Santos**_____, signed sealed, attested and delivered this document as a voluntary act in my presence.

WITNESS my hand and Official Seal

Notary Public
Name_____**Mireya Foster**_____

My commission expires: 8-30-2017

MIREYA FOSTER
NOTARY PUBLIC
STATE OF FLORIDA
Comm# FF014006
Expires 8/30/2017

REDACTED                    REDACTED

**EXHIBIT A**

Assignee: DLJ Mortgage Capital, Inc.
C/O Select Portfolio Servicing, Inc.
3217 S. Decker Lake Drive
Salt Lake City, UT 84119

# EXHIBIT  4

**U.S. Bankruptcy Court**
**Central District of California (Los Angeles)**
**Bankruptcy Petition #: 2:12-bk-35207-BR**

| | |
|---|---|
| | *Date filed:* 07/23/2012 |
| *Assigned to:* Barry Russell | *Date terminated:* 11/01/2012 |
| Chapter 7 | *Debtor discharged:* 10/29/2012 |
| Voluntary | *341 meeting:* 08/24/2012 |
| No asset | *Deadline for objecting to discharge:* 10/23/2012 |
| | *Deadline for financial mgmt. course:* 10/23/2012 |

*Debtor disposition:* Standard Discharge

| | |
|---|---|
| **Debtor** | represented by **Gae Lynn Thornton** |
| **Gae Lynn Thornton** | PRO SE |
| 485 E Elizabeth St | |
| Pasadena, CA 91104 | |
| LOS ANGELES-CA | |
| 310 384-3310 | |
| REDACTED | |

**Trustee**
**Wesley H Avery (TR)**
758 E. Colorado Blvd., Suite 210
Pasadena, CA 91101
(626) 395-7576

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 07/23/2012 | 1 (66 pgs; 2 docs) | Chapter 7 Voluntary Petition . Fee Amount $306 Filed by Gae Lynn Thornton (Mcguire, Debra) Additional attachment(s) added on 7/23/2012 (Mcguire, Debra). (Entered: 07/23/2012) |
| 07/23/2012 | 2 (2 pgs) | Meeting of Creditors with 341(a) meeting to be held on 08/24/2012 at 08:00 AM at RM 101, 725 S Figueroa St., Los Angeles, CA 90017. Objections for Discharge due by 10/23/2012. Cert. of Financial Management due by 10/23/2012 for Debtor and Joint Debtor (if joint case) (Mcguire, Debra) (Entered: 07/23/2012) |
| 07/23/2012 | 3 | Statement of Social Security Number(s) Form B21 Filed by Debtor Gae Lynn Thornton . (Mcguire, Debra) (Entered: 07/23/2012) |
| 07/23/2012 | 4 (1 pg) | Certificate of Credit Counseling Filed by Debtor Gae Lynn Thornton . (Mcguire, Debra) (Entered: 07/23/2012) |
| 07/23/2012 | 5 (3 pgs) | Notice of Requirement to Complete Course in Financial Management (BNC) . (Mcguire, Debra) (Entered: 07/23/2012) |
| 07/23/2012 | | Receipt of Chapter 7 Filing Fee - $306.00 by 93. Receipt Number 20148257. (admin) (Entered: 07/24/2012) |
| 07/25/2012 | 6 (4 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 7)) No. of Notices: 8. Notice Date 07/25/2012. (Admin.) (Entered: 07/26/2012) |
| 07/25/2012 | 7 (5 pgs) | BNC Certificate of Notice (RE: related document(s)5 Notice of Requirement to Complete Course in Financial Management (BNC)) No. of Notices: 1. Notice Date 07/25/2012. (Admin.) (Entered: 07/26/2012) |
| 08/02/2012 | 8 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Singh, Ramesh. (Singh, Ramesh) (Entered: 08/02/2012) |
| 08/28/2012 | 9 | Chapter 7 Trustee's Report of No Distribution: I, Wesley H Avery (TR), having been appointed trustee of the estate of the above-named debtor(s), report that I have neither received any property nor paid any money on account of this estate; that I have made a diligent inquiry into the financial affairs of the debtor(s) and the location of the property belonging to the estate; and that there is no property available for distribution from the estate over and above that exempted by law. Pursuant to Fed R Bank P 5009, I hereby certify that the estate of the above-named debtor(s) has been fully administered. I request that I be discharged from any further duties as trustee. Key information about this case as reported in schedules filed by the debtor(s) or otherwise found in the case record: This case was pending for 1 months. Assets Abandoned (without deducting any secured claims): $ 404020.00, Assets Exempt: Not Available, Claims Scheduled: $ 726020.07, Claims Asserted: Not Applicable, Claims scheduled to be discharged without payment (without deducting the value of collateral or debts excepted from discharge): $ 726020.07. Debtor appeared.. (Avery (TR), Wesley) (Entered: 08/28/2012) |
| 10/04/2012 | 10 (2 pgs) | Financial Management Course Certificate Filed by Debtor Gae Lynn Thornton (RE: related document(s)2 Meeting (AutoAssign Chapter 7)). (Cowan, Sarah) (Entered: 10/04/2012) |

| | | |
|---|---|---|
| 10/04/2012 | | Receipt of Amendment Filing Fee - $30.00 by 05. Receipt Number 20153367. (admin) (Entered: 10/05/2012) |
| 10/04/2012 | 11 (12 pgs) | Summary of Schedules , Statistical Summary of Certain Liabilities, Amending Schedules (F) , Declaration concerning debtor's schedules , Verification of creditor matrix , Matrix (Mailing List) with Amended Cover Sheet and Proof of Service Filed by Debtor Gae Lynn Thornton . (Tom, Bock) (Entered: 10/10/2012) |
| 10/29/2012 | 12 (2 pgs) | DISCHARGE OF DEBTORS (BNC) (Soria, Maria) (Entered: 10/29/2012) |
| 10/31/2012 | 13 (4 pgs) | BNC Certificate of Notice (RE: related document(s)12 DISCHARGE OF DEBTOR - Chapter 7 (CACB AutoDischarge) (BNC)) No. of Notices: 9. Notice Date 10/31/2012. (Admin.) (Entered: 10/31/2012) |
| 11/01/2012 | 14 | Bankruptcy Case Closed - DISCHARGE. Order of Discharge in the above referenced case was entered and notice was provided to parties in interest. Since it appears that no further matters are required that this case remain open, or that the jurisdiction of this Court continue, it is ordered that the Trustee is discharged, bond is exonerated, and the case is closed. (RE: related document(s)12 DISCHARGE OF DEBTOR - Chapter 7 (CACB AutoDischarge) (BNC)) (Mendoza, Maria Patricia) (Entered: 11/01/2012) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/02/2017 14:34:00 | | |
| **PACER Login:** | Pacerwolf:2558381:4814562 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:12-bk-35207-BR Fil or Ent: filed To: 6/2/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# EXHIBIT  5

DISMISSED, Repeat-cacb, PlnDue, Incomplete, RepeatPACER

# U.S. Bankruptcy Court
## Central District of California (Los Angeles)
### Bankruptcy Petition #: 2:17-bk-15044-VZ

*Date filed:* 04/25/2017
*Debtor dismissed:* 05/15/2017
*341 meeting:* 06/01/2017

*Assigned to:* Vincent P. Zurzolo
Chapter 13
Voluntary
Asset

*Debtor disposition:* Dismissed for Failure to File Information

**Debtor**
**Gae Thornton**
485 Elizabeth St.
Pasadena, CA 91104
LOS ANGELES-CA
310-384-3310

represented by **Gae Thornton**
PRO SE

REDACTED

**Trustee**
**Nancy K Curry (TR)**
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
213-689-3014

**U.S. Trustee**
**United States Trustee (LA)**
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017
(213) 894-6811

| Filing Date | # | Docket Text |
|---|---|---|
| 04/25/2017 | 1 (14 pgs; 3 docs) | Chapter 13 Voluntary Petition Individual . Fee Amount $310 Filed by Gae Thornton Summary of Assets and Liabilities (Form 106Sum or 206Sum ) due 5/9/2017. Schedule A/B: Property (Form 106A/B or 206A/B) due 5/9/2017. Schedule C: The Property You Claim as Exempt (Form 106C) due 5/9/2017. Schedule D: Creditors Who Have Claims Secured by Property (Form 106D or 206D) due 5/9/2017. Schedule E/F: Creditors Who Have Unsecured Claims (Form 106E/F or 206E/F) due 5/9/2017. Schedule G: Executory Contracts and Unexpired Leases (Form 106G or 206G) due 5/9/2017. Schedule H: Your Codebtors (Form 106H or 206H) due 5/9/2017. Schedule I: Your Income (Form 106I) due 5/9/2017. Schedule J: Your Expenses (Form 106J) due 5/9/2017. Declaration About an Individual Debtors Schedules (Form 106Dec) due 5/9/2017. Statement of Financial Affairs (Form 107 or 207) due 5/9/2017. Chapter 13 Plan (LBR F3015-1) due 5/9/2017. Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Form 122C-1) Due: 5/9/2017. Chapter 13 Calculation of Your Disposable Income (Form 122C-2) Due: 5/9/2017. Declaration by Debtors as to Whether Income was Received from an Employer within 60-Days of the Petition Date (LBR Form F1002-1) due by 5/9/2017. Incomplete Filings due by 5/9/2017. (Fierro, Viridiana) (Entered: 04/25/2017) |
| 04/25/2017 | 2 (3 pgs) | Meeting of Creditors with 341(a) meeting to be held on 06/01/2017 at 01:00 PM at RM 1, 915 Wilshire Blvd., 10th Floor, , Los Angeles, CA 90017. Confirmation hearing to be held on 09/17/2018 at 09:00 AM at Crtrm 1368, 255 E Temple St., Los Angeles, CA 90012. Proof of Claim due by 08/30/2017. (Fierro, Viridiana) (Entered: 04/25/2017) |
| 04/25/2017 | 3 | Statement About Your Social Security Number (Official Form 121) Filed by Debtor Gae Thornton . (Fierro, Viridiana) (Entered: 04/25/2017) |
| 04/25/2017 | 4 (1 pg) | Certificate of Credit Counseling Filed by Debtor Gae Thornton . (Fierro, Viridiana) (Entered: 04/25/2017) |
| 04/25/2017 | | Receipt of Chapter 13 Filing Fee - $310.00 by 03. Receipt Number 20218084. (admin) (Entered: 04/25/2017) |
| 04/26/2017 | | Notice of Debtor's Prior Filings for debtor Gae Thornton Case Number 12-35207, Chapter 7 filed in California Central Bankruptcy on 07/23/2012 , Standard Discharge on 10/29/2012.(Admin) (Entered: 04/26/2017) |
| 04/26/2017 | 5 (1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Smith, Valerie. (Smith, Valerie) (Entered: 04/26/2017) |
| 04/27/2017 | 6 (4 pgs) | BNC Certificate of Notice (RE: related document(s)2 Meeting (AutoAssign Chapter 13)) No. of Notices: 5. Notice Date 04/27/2017. (Admin.) (Entered: 04/27/2017) |
| 04/27/2017 | 7 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Gae Thornton) No. of Notices: 1. Notice Date 04/27/2017. (Admin.) (Entered: 04/27/2017) |
| 04/27/2017 | 8 (2 pgs) | BNC Certificate of Notice (RE: related document(s)1 Voluntary Petition (Chapter 13) filed by Debtor Gae Thornton) No. of Notices: 1. Notice Date 04/27/2017. (Admin.) (Entered: 04/27/2017) |

| 04/28/2017 | 9<br>(1 pg) | Request for courtesy Notice of Electronic Filing (NEF) Filed by Fujimoto, Daniel. (Fujimoto, Daniel) (Entered: 04/28/2017) |
|---|---|---|
| 05/10/2017 | 10<br>(2 pgs) | Chapter 13 Trustee's Notice of Requirements *with proof of service*. (Curry (TR), Nancy) (Entered: 05/10/2017) |
| 05/10/2017 | 11<br>(6 pgs) | Notice of Appearance and Request for Notice by Nichole Glowin Filed by Creditor Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), Creditor c/o Seterus, Inc.. (Glowin, Nichole) (Entered: 05/10/2017) |
| 05/10/2017 | 12 | Notice to Filer of Error and/or Deficient Document **Incorrect/incomplete/unreadable PDF was attached to the docket entry. THE FILER IS INSTRUCTED TO RE-FILE THE DOCUMENT WITH THE CORRECT PDF IMMEDIATELY.** (RE: related document(s)11 Notice of Appearance filed by Creditor Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), Creditor c/o Seterus, Inc.) (Milano, Sonny) (Entered: 05/10/2017) |
| 05/11/2017 | 13<br>(4 pgs) | Notice of Appearance and Request for Notice by Nichole Glowin Filed by Creditor Bosco Credit, LLC. (Glowin, Nichole) (Entered: 05/11/2017) |
| 05/15/2017 | 14<br>(1 pg) | Order and Notice of Dismissal for Failure to File Schedules, Statements, and/or Plan - DEBTOR Dismissed (BNC) (Alcala, Maria) (Entered: 05/15/2017) |
| 05/17/2017 | 15<br>(2 pgs) | BNC Certificate of Notice (RE: related document(s)14 ORDER and notice of dismissal for failure to file schedules, statements, and/or plan (CACB AutoDismiss) (BNC)) No. of Notices: 9. Notice Date 05/17/2017. (Admin.) (Entered: 05/17/2017) |
| 06/02/2017 | 16<br>(4 pgs) | Chapter 13 Trustee's Final Report and Account . (Curry (TR), Nancy) (Entered: 06/02/2017) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 06/02/2017 14:33:35 | | |
| **PACER Login:** | Pacerwolf:2558381:4814562 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 2:17-bk-15044-VZ Fil or Ent: filed To: 6/2/2017 Doc From: 0 Doc To: 99999999 Term: included Format: html Page counts for documents: included |
| **Billable Pages:** | 2 | **Cost:** | 0.20 |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
2955 Main Street, 2nd Floor, Irvine, CA 92614

A true and correct copy of the foregoing document entitled (*specify*): **OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/19/2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

*U.S. Trustee: United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov*
*Chapter 13 Trustee: Kathy A. Dockery (TR), efiling@CH13LA.com*

☐ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 07/19/2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

*Debtor: Gae Thornton, 485 Elizabeth St., Pasadena, CA 91104 (U.S. Mail)*

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/19/2017 | Aaron Rea | /s/Aaron Rea |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

6401-39980

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.